IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEE ANN BOURLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-797-M |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Commissioner issued a final decision denying Lee Ann Bourland's (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the Court affirm the Commissioner's decision.

I.  **Administrative proceedings.**

In her application for benefits, Plaintiff alleged that her impairments became disabling in December 2008. AR 171-72. The Social Security

Administration (SSA) denied Plaintiff's claim, and at her request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 32-49. In his October 2011 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 26. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-6, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ will conduct a residual functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 404.1545(e);

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

2

*Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that she cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### III. Plaintiff's claims.

According to Plaintiff, the ALJ made three significant errors. First, he allegedly failed to incorporate all of Plaintiff's RFC limitations in the hypothetical question he posed to the vocational expert (VE). Doc. 11, at 4-7. Second, the ALJ allegedly failed to give "specific, legitimate reasons" for rejecting a treating physician's medical opinion. *Id.* at 8. Third and finally, the ALJ allegedly failed to sufficiently discuss all of Plaintiff's impairments. *Id.* at 8-9.

The undersigned finds that the ALJ's failure to incorporate all of Plaintiff's limitations into the hypothetical question to the VE amounts to harmless error. The undersigned finds no legal error in Plaintiff's second and third arguments.

## IV. Analysis.

### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). The Court may affirm the Commissioner's decision, despite the ALJ's error, "where, . . . we [can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B. The ALJ's findings.

The ALJ found that Plaintiff: (1) meets the insured status requirements through December 31, 2014; (2) has not engaged in substantial gainful activity since December 15, 2008; and (3) has severe "diabetes mellitus, affective mood disorders, anxiety-related disorders, and personality disorders."[3] AR 14. The ALJ then opined that:

> [Plaintiff] has the [RFC] to perform light work . . . except [she] must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [Plaintiff] is able to perform simple and some more complex tasks with routine supervision in a familiar setting. She should avoid contact with the general public.

---

[3] Unless otherwise indicated, all quotations are reprinted verbatim.

*Id.* at 16. The ALJ found that with this RFC, Plaintiff can perform the unskilled jobs of "laundry sorter," "price marker," and "pre circuit board assembler,"[4] each of which exists in significant numbers in the national economy. *Id.* at 25.

C.  **The ALJ's hypothetical question to the VE.**

At step five, the ALJ may "relate the claimant's impairments to a VE and then ask the VE whether . . . there are any jobs in the national economy that the claimant can perform." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) (citation omitted). However, for the VE's testimony to constitute substantial evidence, the ALJ must "relate with precision all of a claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citation omitted); *see also Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) ("The rule is well-settled that, where a hypothetical question fails to include 'all (and only) those impairments borne out by the evidentiary record,' . . . a VE's testimony in response to it cannot provide substantial evidence to support an ALJ's findings regarding the work a claimant is able to perform[.]" (citations omitted)).

---

[4]  The Dictionary of Occupational Titles (DOT) describes these jobs as "laundry worker," DOT 302.685-010, 1991 WL 672657, "marker," DOT 209.587-034, 1991 WL 671802, and "preassembler, printed circuit board," DOT 726.687-038, 1991 WL 679639.

5

The Commissioner concedes, Doc. 14, at 3, that when the ALJ questioned the VE, he failed to include Plaintiff's limitations to performing "simple and some more complex tasks with routine supervision in a familiar setting" and avoiding "contact with the general public." AR 16. The Commissioner argues, however, that the error is harmless because the jobs the VE identified are unskilled, do not require more than routine supervision, and do not require significant interaction with people. Doc. 14, at 4-5. The undersigned agrees. *See Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013) (applying the harmless error rule and holding that where two of four jobs the VE identifies are nevertheless consistent with Plaintiff's RFC, the ALJ's failure to include all the RFC limitations in the hypothetical question is "harmless error"); *see also Lara v. Colvin*, CIV-12-1249-L, 2014 WL 37746, at *1 (Jan. 6, 2014) (adopting magistrate judge's harmless-error analysis where the ALJ "did not include" a certain limitation, and VE identified one job existing in significant numbers that would accommodate that limitation).

As noted above, the three jobs the VE identified are all unskilled. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). That is, unskilled work generally requires the basic mental ability to: (1) understand, remember and carry out simple instructions; (2) make simple work related decisions; (3) respond appropriately to supervision,

co-workers, and work situations; and (4) deal with changes in a routine work setting. *See* SSR 85-15, 1985 WL 56857, at *4 (1985). Unskilled work also involves "dealing primarily with objects, rather than with data or people[.]" *Id.* So, by definition, Plaintiff can perform unskilled work with her limitations to "simple and some more complex tasks with routine supervision in a familiar setting," AR 16, and avoidance of the general public. *See also Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (noting that the duties of unskilled work were consistent with claimant's RFC limitation to "'simple, repetitive tasks'" and "only 'incidental contact with the public'" (citation omitted)).[5]

In sum, the ALJ failed to include some of Plaintiff's limitations in the hypothetical question to the VE, but Plaintiff can nevertheless perform all the jobs that the VE identified. So, the undersigned finds that the ALJ's error "is harmless and does not require remand." *Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013) (finding harmless the ALJ's failure to include one of claimant's limitations in the hypothetical question to the VE where plaintiff could nevertheless perform the identified job, and instructing: "No principle of administrative law or common sense requires us to remand a case

---

[5] Additionally, the jobs of "laundry worker," "marker," and "preassembler, printed circuit board" all involve "not significant" involvement with people. DOT 302.685-010, 1991 WL 672657 (laundry worker), DOT 209.587-034, 1991 WL 671802 (marker), DOT 726.687-038, 1991 WL 679639 (preassembler, printed circuit board).

7

in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citation omitted)).

### D. The ALJ's alleged error in rejecting a treating physician's opinion.

In August 2011, one of Plaintiff's treating physicians, Dr. Robert Dimski, completed a medical source statement. AR 635-36. In that assessment, the physician opined in relevant part that Plaintiff: (1) can only stand a total of two hours and walk a total of one hour in an eight-hour work day; (2) can never lift any weight; (3) is unable to pay attention and concentrate on even simple work tasks twenty-percent of an eight-hour work day; (4) needs unscheduled work breaks every hour, lasting thirty minutes; and (5) will be absent from work more than four days a month. *Id.*

The ALJ discussed this opinion, finding in relevant part:

> As for the opinion evidence, Dr. Dimski's Medical Source Statement – Physical dated August 11, 2011 which gave the claimant a less than sedentary residual functional capacity and showed she was not able to lift anything was not consistent with the other medical documentation. Dr. Dimski's records do not show a diagnostic testing, or laboratory findings for these restrictions or limitations. Dr. Dimski's records do not show complete or[] adequate testing and he did not treat the claimant for her mental issues. Dr. Dimski's limitations are not wholly consistent with the objective physical examinations in the file by other treating physicians. The Administrate Law Judge finds that the residual functional capacity assessment by Dr. Dimski is not consistent with the medical evidence as a whole.

*Id.* at 23.

Plaintiff alleges that: (1) the ALJ's finding conflicts with his earlier declaration that the treating physicians' opinions were entitled to "great weight"; (2) his opinion is "vague" and fails to specify the inconsistent evidence; and (3) the ALJ failed to give any specific, legitimate reasons for rejecting Dr. Dimski's report. Doc. 11, at 7-8. The undersigned disagrees with each argument.

### 1. The treating physician rule.

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under that rule, the ALJ must first determine whether the treating physician's opinion is to be accorded "controlling weight." *Krauser*, 638 F.3d at 1330. The opinion is entitled to "controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." *Id.* (citation omitted). If the ALJ finds that the opinion is not entitled to "controlling weight," he must then "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons . . . for the weight assigned." *Id.* If the ALJ ultimately rejects the treating physician's opinion, he must

provide specific and legitimate reasons for doing so. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

2. **The ALJ's alleged inconsistency.**

Plaintiff first alleges that the ALJ inconsistently rejected Dr. Dimski's opinion after having already stated that the treating physicians' opinions were entitled to "great weight." Doc. 11, at 7. But Plaintiff misinterprets the ALJ's findings. That is, the ALJ said that he was giving "great weight" to the treating physicians' "assessments" and then cited in part to Dr. Dimski's treatment notes. AR 23. The ALJ then found that Dr. Dimski's lack of adequate testing and *opinion* regarding Plaintiff's limitations was inconsistent with the evidence of record. *Id*. The undersigned sees no inconsistency in the ALJ's finding.

3. **The ALJ's alleged failure to discuss the inconsistent evidence.**

Plaintiff further alleges that the ALJ's opinion was "vague" regarding what evidence was inconsistent with Dr. Dimski's medical source statement. However, the ALJ dedicated at least five pages to examining the medical evidence, and he specifically discussed evidence from thirteen medical sources. AR 18-23. The ALJ then explained that Dr. Dimski's proposed limitations were inconsistent with that objective medical evidence. *Id.* at 23. Reading the opinion with common sense, the undersigned finds that the ALJ

was clearly relying on the medical evidence he had just detailed and rejects Plaintiff's suggestion that the ALJ's opinion was vague. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (cautioning that "common sense, not technical perfection, is our guide").

### 4. The ALJ's alleged failure to give specific, legitimate reasons for rejecting Dr. Dimski's opinion.

Finally, Plaintiff alleges that the ALJ failed to give specific, legitimate reasons for rejecting Dr. Dimski's opinion. Doc. 11, at 7. But the ALJ specifically stated that: (1) Dr. Dimski did not cite any diagnostic testing or laboratory findings to support his proposed limitations; (2) the physician's records did not reflect any such testing; (3) Dr. Dimski did not treat Plaintiff for her mental impairments; and (4) Dr. Dimski's proffered limitations were inconsistent with the medical evidence as a whole. AR 23. These are legitimate reasons for rejecting a treating physician's opinion. *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (holding that an "ALJ may disregard a treating physician's opinion" when it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence" (citation omitted)); *Beasley v. Colvin*, 520 F. App'x 748, 751-52 (10th Cir. 2013) (holding that the ALJ "gave good reasons for the weight he assigned [the treating physician's] opinion," including that the physician's limitations were inconsistent with

11

treatment notes and unsupported by "corresponding objective evidence"); *Palmer v. Dep't of Health & Human Servs.*, 50 F. App'x 957, 962 (10th Cir. 2002) (holding that the ALJ properly discounted the treating physician's opinion in part because "Dr. Carabajal is a board-certified family practitioner, . . . and there is no evidence in the record indicating that Dr. Carabajal treated plaintiff for her mental impairments").

### E. The ALJ's alleged failure to discuss all of Plaintiff's impairments.

Finally, Plaintiff alleges that the ALJ "fails to tell us his opinion about other impairments . . . so we are left to wonder if they are nonsevere, or much of any importance at all." Doc. 11, at 8. Plaintiff then refers to her "gastroparesis that required surgery, hiatal hernia, asthma, agoraphobia, headaches, painful plantar fasciitis, diabetes and visual disturbances from lack of blood sugar control" and "[post-traumatic stress disorder]." *Id.* The undersigned finds that Plaintiff's allegation is both inaccurate and undeveloped.

For example, the ALJ found that Plaintiff has severe diabetes and multiple mental disorders. AR 14. Further, the ALJ specifically discussed medical evidence relating to Plaintiff's gastrointestinal problems, *id.* at 18, 19, 21, 22; hernia, *id.* at 18, 22; asthma, *id.* at 18, 20, 21, 22; agoraphobia, *id.* at 19, 20, 21, 22; headaches, *id.* at 18-19, 20; plantar fasciitis, *id.* at 19, 20,

21, 22; blurry vision, *id.* at 18-19, 20, 21; and post-traumatic stress disorder, *id.* at 20, 21, 22. *After* discussing all this evidence, the ALJ then stated that he "has considered the combination of all the claimant's medically determinable impairments . . . ." *Id.* at 22. Finally, the ALJ specifically discounted Plaintiff's allegations of disabling symptoms relating to her gastrointestinal problems, hernia, asthma, agoraphobia, and blurry vision. *Id.* So, the undersigned finds no legitimacy in Plaintiff's allegation that the ALJ did not consider these impairments.

Additionally, the undersigned finds that Plaintiff's argument is undeveloped. That is, Plaintiff neither cites to any evidence that the ALJ ignored nor explains how any of these impairments affected her RFC. *See Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (holding that plaintiff had "not presented an adequately developed challenge" to the ALJ's discussion of nonsevere impairments where he did "not challenge particular aspects of the ALJ's discussion of the evidence, nor cite to specific evidence in the record that the ALJ should have but did not address"); *Blankenship v. Colvin*, No. CIV-12-783-C, 2013 WL 2003916, at *2 (W.D. Okla. May 13, 2013) (unpublished order) (adopting the magistrate judge's rejection of plaintiff's claim that the ALJ failed to consider her nonsevere impairment; magistrate judge found "no error" where plaintiff "'made no attempt to identify any additional functional limitations related to her [nonsevere

impairment] which should have been included in the RFC' but were omitted" (internal brackets and citation omitted)).

For both reasons, the undersigned finds no error in the ALJ's treatment of Plaintiff's impairments.

## V. Recommendation and notice of right to object

For the reasons discussed above, the undersigned recommends that the Court affirm the Commissioner's decision.

The parties are advised of their right to object to this report and recommendation by the 18th day of May, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of April, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE